**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**PATRICK JOSEPH MECKLING,**

      **Petitioner,**

**v.**                                                  **Civil Action No. 5:15cv106
(Judge Stamp)**

**JOHN MURPHY, Warden,**

      **Respondent.**

**REPORT AND RECOMMENDATION ON
PETITIONER'S SECOND MOTION TO STAY AND ABEY**

**I. Introduction**

On August 14, 2015, *pro se* Petitioner, an inmate then-incarcerated at Mt. Olive Correctional Center[1] ("MOCC") in Mt. Olive, West Virginia, filed a petition under 28 U.S.C. § 2254. Pursuant to an August 24, 2015 Notice of Deficient Pleading, after twice being directed [ECF No. 8, 14] to refile his petition in compliance with the Local Rules of Prisoner Litigation Procedure ("LR PL P"), on October 5, 2015, Petitioner filed his petition on a court-approved form.  ECF No. 16.  By order entered October 7, 2015, Petitioner was granted permission to proceed as a pauper but was directed to pay the five dollar filing fee.  ECF No. 17.  Petitioner paid the requisite fee on October 21, 2015.  ECF No. 19. On November 4, 2015, pursuant to Rule 4 of the Rules Governing Section 2254 Proceedings in the United States District Courts, Magistrate Judge James E. Seibert made a preliminary review of the petition, found that summary dismissal of the same was not warranted, and directed the Respondent to answer the petition. ECF No. 23.

---

[1] Petitioner is presently incarcerated at Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia.

The Respondent filed an answer, a motion to dismiss[2] for failure to exhaust state court remedies, and a memorandum in support on February 1, 2016. ECF No. 31, 32, 33. Because Petitioner was proceeding *pro se*, on February 2, 2016, a <u>Roseboro</u> Notice was issued [ECF No. 34], advising him of his right to respond to the Warden's dispositive motion. On February 16, 2016, Petitioner filed two responses to Respondent's dispositive motion. ECF Nos. 36 & 37.

Despite having already filed two responses, on April 4, 2016, Petitioner filed a Motion for Extension of Time to File Reply, which Magistrate Judge James E. Seibert granted on April 8, 2016. ECF Nos. 38, 39.

On May 2, 2016, Petitioner filed his first Motion for Stay and Abeyance, reiterating and rewording the Grounds One – Four already raised in his federal petition; indicating his intent to later amend his federal petition to add three more proposed new claims (identified as Grounds Five [sic] – Seven), once he finished exhausting them in state court; and to eventually withdraw his present Grounds Three and Four. ECF No. 42 at 3. Citing concern about the potential untimeliness of the proposed new claims, he asked that the Court view his instant filing as a "protective § 2254 petition" under <u>Pace v. Guglielmo</u>, 544 US 408 (2005), to be filed, stayed, and held in abeyance until he finished exhausting its claims.[3] <u>Id.</u> at 6. He attached a copy of an as-yet unfiled copy of what was to be his third state habeas filing in the Ohio County Circuit Court, which raised 4 claims.[4] ECF No. 42. He also filed another Reply to Respondent's Answer and Motion to Dismiss. ECF No. 43.

---

[2] While not so titled, the memorandum in support of the Motion to Dismiss also contained Motion for Summary Judgment argument.

[3] Despite Petitioner's request, the motion was only docketed as a motion to stay, and not also as a motion to amend his federal petition.

[4] This petition was filed the same day, as Ohio County Circuit Court Case No. 16-C-128.

By Report and Recommendation ("R&R") issued on May 3, 2016, Magistrate Judge James E. Seibert recommended that Petitioner's first motion for stay and abeyance be granted and that the Respondent's motion to dismiss be denied without prejudice. ECF No. 44.  By Memorandum Opinion and Order entered June 1, 2016, the R&R was adopted and the instant action stayed. Petitioner was directed to file quarterly reports, beginning on August 1, 2016, regarding the status of his state habeas proceedings on the unexhausted claims; to file a notice of exhaustion within thirty days from the date his state court remedies were fully exhausted; and the Respondent's pending Motion to Dismiss was denied without prejudice. ECF No. 46. Thereafter, on August 11, 2016, and again on April 4, 2017, Petitioner filed quarterly reports.  See ECF Nos. 48, 51.

On June 13, 2017, Petitioner filed a letter motion to lift the stay, advising that on June 2, 2017, the WVSCA had issued a memorandum decision on the appeal of his third state habeas, affirming the circuit court.  ECF No. 52.  On June 15, 2017, Petitioner filed another letter motion to lift the stay.  ECF No. 53.  By Order entered June 19, 2017, the first motion to lift the stay was granted, the second was denied as moot, and the matter was recommitted to Magistrate Judge James E. Seibert.  ECF No. 54.  On August 23, 2017, Magistrate Judge James E. Seibert again directed the Respondent to answer the petition. ECF No. 56.

By Order entered on September 15, 2017, the case was reassigned from Magistrate Judge James E. Seibert to the undersigned.

On September 18, 2017, Petitioner filed the instant second motion to stay the proceedings and hold his petition in abeyance, attaching copies of documents evincing his intent to file a fourth state habeas proceeding.[5] ECF No. 58. By Order entered September 19, 2017, the

---

[5] This fourth petition for a writ of habeas was ultimately filed in Circuit Court of Ohio County on September 20, 2017 and docketed as Case No. 17-C-267.

undersigned directed the Respondent to show cause why the second motion to stay and abey should not be granted, vacated the prior order to answer, and corrected the Respondent's name on the docket.  ECF No. 59.  On September 22, 2017, the Respondent filed its response in support of the motion to stay. ECF No. 60.

By Order entered March 20, 2018, Petitioner was directed to produce documentation to clarify the record. ECF No. 62. Petitioner filed his response on March 30, 2018. ECF No. 64.  By Order entered April 6, 2018, Respondent was directed to supplement the record.  ECF No. 65. Petitioner filed a second response on April 9, 2018. ECF No. 66. On April 20, 2018, Respondent filed its response. ECF No. 68.

## II. Procedural History

### A. State Court Proceedings

On the evening of July 13, 2007, Petitioner and his longtime girlfriend ("victim") met at a bar in Wheeling, West Virginia. After drinking and gambling there, the victim did not want to leave with Petitioner because she was violating a condition of her participation in drug court by being with him. Petitioner grabbed her arm and demanded that she get in his truck. The victim later attempted to get out of the vehicle, but petitioner grabbed her by her hair and punched her in the head several times, then drove her to her apartment, where they smoked crack (purchased with the victim's money) and engaged in sexual intercourse. On the morning of July 14, 2007, apparently at the urging of her family, who were upset by her injuries, the victim reported the incident to the police and filed a petition for a domestic violence protective order. Photographs were taken, showing bruising and injuries to her arm and eye.[6]

### 1) Circuit Court of Ohio County Convictions

---

[6] This summary of relevant facts was obtained from the WVSCA's memorandum decision on Petitioner's appeal of his third state habeas petition.  See Meckling v. Plumley, 2017 W. Va. LEXIS 423 * 1 – 3 (W.Va. June 2, 2017).

On September 11, 2007, in Case No. 07-F-91, a Grand Jury in Ohio County, West Virginia, considered four charges in a four-count indictment naming Meckling: Count One, the felony offense of kidnaping, in violation of West Virginia Code § 61-2-14(a); Count Two, the felony offense of Abduction with the Intent to Defile, in violation of West Virginia Code § 61-2-14; Count Three, the felony offense of Malicious Assault, in violation of West Virginia Code § 61-2-9(a); and Count Four, the misdemeanor charge of Driving while Revoked for Driving Under the Influence of Alcohol, Second Offense, in violation of West Virginia Code § 17B-4-3. See ECF No. 32-1. The Grand Jury returned a not-true bill as to the kidnaping charge, but true bills as to the other three charges.  See ECF No. 32-1. Attorney Franklin Lash was appointed as trial counsel.

On September 27, 2007, Petitioner filed a motion to sever the Abduction with Intent to Defile and Malicious Assault charges from the Driving While Revoked for Driving Under the Influence – Second Offense.  ECF No. 32-1 at 6. After an October 2, 2007 hearing on the matter, the severance was granted. Id.

Following a one-day jury trial in the Circuit Court of Ohio County, West Virginia, on October 29, 2007, the jury returned a guilty verdict as to the Abduction charge and a guilty verdict as to Battery, as a lesser-included offense of Malicious Assault. ECF No. 32-1 at 28 - 29. After the jury was dismissed, the State filed a recidivist Information charging Meckling with being the same person previously convicted at least twice of felonies punishable by confinement in the penitentiary. ECF No. 32-1 at 36 - 37. At a December 3, 2007 hearing, Meckling admitted he was the same person who committed the two crimes charged in the Recidivist Information. ECF No. 32-1 at 54.

On December 10, 2007, after considering Petitioner's motion to dismiss the Life Recidivist charge [ECF No. 32-1 at 58] and hearing argument on the same, the Court found that even though one of the prior offenses was non-violent, because the other offense and the triggering offense were violent, the offenses sufficiently satisfied proportionality principles. Id. at 59. Accordingly, Petitioner was sentenced to life on the Abduction with Intent to Defile and a one-year sentence on the misdemeanor Battery conviction, to run concurrently. Id. at 60.

On May 16, 2016, Petitioner filed a motion pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure for a sentence reduction. See ECF No. 68-2 at 2 – 20; see also ECF No. 68-1, l. 131 at 4. To date, that motion is still pending.

**2) Direct Appeal**

On December 27, 2007, through counsel,[7] Petitioner filed a notice of appeal. ECF No. 32-2 at 2.  In his petition for appeal  in West Virginia Supreme Court of Appeals ("WVSCA") Case No. 080919, Meckling raised these two grounds:

1)  The trial court erred when it had Meckling placed in handcuffs in front of the jury, prior to recess but before the end of the trial, and then refused to grant a mistrial. ECF No. 32-2 at 12.

2) The trial court erred when it held that only two of the three felonies required for a life recidivist sentence need to be violent.  Id.

On May 22, 2008, the WVSCA refused Petitioner's appeal.  ECF No. 32-2 at 24.

**3) State Habeas Corpus**

**A) First State Habeas**

Although Meckling's federal habeas petition fails to mention it,[8] it is apparent from the record that on or about October 14, 2008, Petitioner filed a *pro se* petition for habeas corpus

---

[7] Attorney Franklin Lash was also appointed as appellate counsel.

relief, in the Circuit Court of Marshall County, West Virginia, the jurisdiction where he was then

detained, rather than in the Circuit Court of Ohio County, where he was convicted. See ECF No.

66. Without assigning a case number to the petition, by Order entered October 27, 2008, the

Circuit Court of Marshall County transferred the matter to the Circuit Court of Ohio County,

West Virginia. See ECF No. 64-3 at 1-2. Although no copy of that petition or the October 27,

2008 Order transferring it were ever docketed in the Ohio County Circuit Court's records in

2008, copies of both have finally been located and forwarded to the Ohio County Circuit Clerk to

complete its records.[9] That petition, filed without a memorandum in support, raises four grounds:

_____

[8] Petitioner did mention having filed this *pro se* petition in his subsequently-filed original jurisdiction petition filed
in the WVSCA; however, he indicated that it raised six [sic] grounds. See ECF No. ECF No. 32-2 at 53.

[9] For reasons unknown, neither the October 27, 2008 Marshall County Circuit Court transfer order nor the *pro se*
petition itself originally appeared anywhere on the dockets of the Ohio County Circuit Court, in either Petitioner's
criminal case or in his subsequently-filed habeas case(s). In early March, 2018, the *pro se* law clerk ("PSLC")
assigned to this case contacted the Ohio County Circuit Clerk, and a specific search conducted by the Clerk for both
was unsuccessful.
        The PSLC then contacted the Marshall County Circuit Clerk by phone, to see if it had a copy of the petition
and transfer order; Marshall County found no record of the petition ever having been filed there, let alone transferred
to Ohio County. The PSLC then went to the Ohio County Circuit Clerk's office in person and searched its paper and
electronic records. Finally, the PSLC searched the paper records of the Ohio County Prosecutor's off-site storage
file, before finally locating a hard copy of the Marshall County Circuit Court October 27, 2008 order transferring the
petition to the Circuit Court of Ohio County, but no copy of the petition itself.
        Nonetheless, once a copy of that October 27, 2008 transfer order was provided to the Ohio County Circuit
Clerk on or about March 22, 2018, the Ohio County Circuit Clerk docketed it [see ECF No. 68-1, l. 137 at 4] and
then re-provided it to Marshall County Circuit Clerk; the Marshall County Circuit Clerk was then able to use it to
search its "registry" of its 2008 filed cases, and a copy of the missing petition was finally located in a miscellaneous
file and reprovided to the Ohio County Circuit Clerk's office, where it was then finally docketed in Meckling's
underlying criminal case [see ECF No. 68-1, l. 134 at 4], along with the orders dismissing it.
        The copy of the petition provided by the Clerk of Marshall County Circuit Court does not include a copy of
the envelope it was mailed in, so its postmark date is unknown. The certificate of service on the petition is dated
October 9, 2008 [ECF No. 68-3 at 9] but a hand-written motion for appointed counsel attached to its last page, while
also dated October 9, 2008, was clearly notarized at the Northern Regional Jail ("NRJ") on October 14, 2008, thus,
under the prison mailbox rule articulated in Houston v. Lack, 487 U.S. 266 (1988), that latter date will be construed
as the date Petitioner filed the petition, despite Petitioner's error in filing it with the wrong court. See United States
v. McNeill, 523 Fed. Appx. 979, 979 - 80 (May 1, 2013) (transfer under 28 U.S.C. § 1631 for an petition improperly
filed in the wrong court is in the interest of justice, where the statute of limitations would otherwise bar a petitioner
from pursuing his habeas rights) (*citing* Shaw v. United States, 417 Fed. Appx. 311, 2011 WL 915814 (4th Cir.
2011)).

        There is no record of when Ohio County Circuit Court originally received the petition and transfer order
from Marshall County.

1) Prosecutorial misconduct occurred when Petitioner's conviction was obtained by testimony coerced from the alleged victim [ECF No. 68-3 at 5];

2) Counsel was ineffective for failing to subpoena 3 key witnesses who would have made a difference in the outcome of the proceedings [id.];

3) his conviction was obtained via the use of a tainted jury [because]:

> a) when selecting potential jurors for his case, one of the last jurors selected stood up and pointed at Petitioner in front of the other jurors and told them that Petitioner was guilty [id.]; and

> b) when Petitioner got up to go out for a break during the trial's third recess, he was forcibly handcuffed in front of the jury. Id. at 11.

4) The imposition of a recidivist life sentence was unconstitutional because Petitioner's 1997 felony convictions for forgery and uttering were used as one of the predicate convictions; they were nonviolent crimes for which Petitioner never served time in a penitentiary. Id. at 5.

For reasons unknown, the records of the Ohio County Circuit Court indicate that no separate civil action was opened for this habeas petition; the matter was merely docketed in Petitioner's underlying criminal case. It does not appear from the record that the state was ever directed to, or did file a response to the petition. On December 9, 2008, by memorandum of opinion and order entered in Petitioner's underlying criminal case, this first *pro se* habeas petition was denied without a hearing.[10] ECF No. 32-2 at 26 – 27. It is apparent from the record that at some point after that, Petitioner filed a renewed petition for writ of habeas corpus in response to this.[11] On January 28, 2009, the circuit court issued a supplemental memorandum of opinion and order, also docketed in the criminal case, addressing Petitioner's renewed Petition under West Virginia Code § 53-4A-1 for a Writ of Habeas Corpus regarding the first memorandum of opinion and order's perceived failure to contain specific findings of fact and

---

[10] This Order is one page long and says that "the grounds for relief the Petitioner has asserted have been previously and finally adjudicated or waived." See ECF No. 32-2 at 26. It does not reveal when the petition was filed or what the claims raised were.

[11] This "renewed Petition for Writ of Habeas Corpus" likewise does not appear anywhere on the docket of Petitioner's Ohio County Circuit Court Case No. 07-F-91 and has never been located. See ECF No. 32-4 at 23.

conclusions of law, and again directing that the *pro se* petition be dismissed without a hearing. ECF No. 32-2 at 29.  Petitioner did not appeal.

**B. <u>Second State Habeas</u>**

On or about March 5, 2009, Petitioner filed an original jurisdiction *pro se* petition for habeas relief in the WVSCA, where it was docketed as Case No. 09-0337.  ECF No. 32-2 at 52, 73.

The claims raised in this *pro se* petition, filed without a memorandum in support, were that:

1) Prosecutorial misconduct occurred when his conviction was obtained by testimony coerced from the alleged victim [ECF No. 32-2 at 55];

2) Counsel was ineffective for failing to subpoena key witness Marsha Bush and four other witnesses [<u>id.</u>];

3) his conviction was obtained via the use of a tainted jury [because]:

a) when selecting potential jurors for his case, one of the last jurors selected stood up and pointed at Petitioner in front of the other jurors and told them that Petitioner was guilty [<u>id.</u>]; and

b) when Petitioner got up to go out for a break during the trial's third recess, he was forcibly handcuffed in front of the jury for no apparent reason [<u>id.</u> at 62];

4) the imposition of a recidivist life sentence violates the proportionality clause in Article III, Section 5 of the West Virginia Constitution [<u>id.</u> at 55 – 56]; and

5) the prosecution [sic] did not follow W.Va. Code § 61-11-18 in sentencing Petitioner to "recidivist life." <u>Id.</u> at 57.

6) Petitioner's conviction was obtained by the prosecution's unconstitutional failure to permit the jury to hear facts that could have changed the outcome of the trial. <u>Id.</u> at 58.

By WVSCA Order issued on May 13, 2009, a rule was issued returnable to the Circuit Court of Ohio County, directing it to appoint counsel to assist Petitioner in filing an amended

petition and at an omnibus hearing, and dismissing the matter from the WVSCA's docket.[12] See ECF No. 32-2 at 77.

Thereafter, on May 21, 2009, Petitioner's second state habeas action was assigned Circuit Court of Ohio County, West Virginia Case No. 09-C-163 and counsel was appointed.[13] Petitioner opted to continue on his original theories of relief, and on February 26, 2010, through appointed counsel, he filed a Separate Memorandum of Law in support of his original claims instead of an amended petition.  ECF No. 32-2 at 82.  In that memorandum, Petitioner argued that:

1) The Court deprived Petitioner of his due process rights, as such have been prescribed under both State and Federal Constitutions, when it ordered him shackled during the course of the trial in the presence of the jury, and security and order did not warrant such intrusive conduct. Id. at 89.

2) The Court deprived the Petitioner those protections afforded by both the State and Federal Constitutions when it sentenced Petitioner, pursuant to West Virginia's recidivist statute, to life imprisonment despite the disproportionate non-violent nature and character of one of the three predicate offenses. Id. at 93.

3) Petitioner seeks a new trial based upon newly discovered impeachment evidence, i.e., recantations made by the complaining witness in the underlying matter.  Id. at 96.

On July 20, 2010, an Order was entered in both the underlying criminal case and the second habeas case, permitting habeas counsel to contact members of the jury. ECF No. 32-3 at 2.  It does not appear from the record that the state was ever directed to respond to the petition. See ECF No. 32-4 at 25 – 27.

On July 25, 2013, the circuit court issued a one-page memorandum of opinion and order, denying relief without a hearing and dismissing the petition.  ECF No. 32-3 at 4.  On August 8, 2013, Petitioner moved for reconsideration.  ECF No. 32-3 at 6.  On February 3, 2014, the circuit

---

[12] A copy of this *pro se* original jurisdiction petition was attached to the WVSCA's order that was sent to the Circuit Court of Ohio County and the petition was docketed there as an attachment to that order.  See ECF No. 32-4, l.1 at 25.

[13] Brent A. Clyburn was appointed habeas counsel.  See ECF No. 32-2 at 82.

court granted relief and awarded Petitioner a new trial.  ECF No. 32-3 at 24 - 32.  On March 11, 2014, the state moved to delay the execution of the court's order, to prevent Petitioner's release from prison during the pendency of its appeal. ECF No. 32-3 at 37.  By Order entered March 12, 2014, the circuit court stayed its February 3, 2014 Order rescinding and vacating Petitioner's convictions and directed that Petitioner remain in custody until further order.  See ECF No. 32-4, l. 87 – 89 at 26.  On May 14, 2015, Petitioner filed a motion for Adjudication of Unresolved Claims.  See ECF No. 32-4, l. 98 at 26.  By Order entered May 27, 2015, the motion was denied. ECF No. 16-2 at 2 – 3.

## **Respondent's Appeal to the WVSCA of the Grant of Relief on Petitioner's Second State Habeas Corpus**

On February 25, 2014, the Respondent filed its notice of intent to appeal. ECF No. 32-3 at 34. The case was docketed as WVSCA Case No.  14-0245. On appeal, the state challenged the circuit court's decision to grant Petitioner relief, arguing that:

1)  the trial court erred in granting Meckling's amended [sic] petition for writ of habeas corpus as the same was barred by the doctrines of *res judicata* and/or collateral estoppel.[14] State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995) at Syl. Pt. 1.

2) The trial court erred in its application of State v. Brewster, 164 W.Va. 173, 261 S.E.2d 77 (1979) and State v. Linkous,[15] 177 W.Va. 621, 355 S.E.2d 410 (1987).

---

[14] The state argued that it was *res judicata* and/or collateral estoppel for the circuit court to again consider the first assignment of error raised in Meckling's petition for direct appeal (that the trial court erred when it had Meckling placed in handcuffs in front of the jury), contending that Meckling had raised the claim in his first *pro se* petition and then again in his "Renewed Petition for Writ of Habeas Corpus Asserting the Court's December 9, 2008 Memorandum of Opinion and Order Did not Contain Specific Findings of Fact and Conclusions of Law." See ECF No. 32-3 at 53.  The state noted that when the circuit court entered its January 28, 2009 Supplemental Memorandum of Opinion and Order in response, asserting that it had indeed previously made a specific Finding of Fact and Conclusion of Law that all of Petitioner's grounds for relief had been previously adjudicated or waived, before again dismissing Petitioner's first habeas petition, that it was "the third consecutive time . . . [Meckling attempted] to obtain relief from . . . the issue of . . . being handcuffed immediately prior to the [trial] lunch recess[.]" Id.

[15] This ground also addressed the fact that Petitioner was seen by one or more members of the petit jury being handcuffed for a brief period of time. See ECF No. 32-3 at 55 – 57.

3) The trial court's findings of fact were clearly erroneous and the trial court abused its discretion in its rulings.[16]  See Syl. Pt. 3, State v. Vance, 207 W.Va. 640, 535 S.E.2d 484 (2000).

ECF No. 32-3 at 52.

In response, through appointed habeas counsel, Petitioner argued that the circuit court correctly granted relief because Petitioner's state and federal due process rights were violated when he was shackled unnecessarily during trial in the presence of the jury. ECF No. 32-3 at 68.

In its April 9, 2015 opinion, the WVSCA reversed the circuit court's order. ECF No. 32-4 at 2 - 17. Mandate issued on May 11, 2015. ECF No. 32-4 at 19.  On August 14, 2015, the WVSCA issued a corrected opinion, to clarify its inadvertent repetition of typographical error[17] originally made in the circuit court's February 3, 2014 order granting relief on Meckling's second petition.[18] ECF No. 37-2.

## C. **Third State Habeas Petition**

On May 2, 2016, Meckling filed a third *pro se* habeas petition in the Circuit Court of Ohio County where it was docketed as Ohio County Circuit Court Case No. 16-C-128. ECF No. 42-1. In it, Meckling raised four claims:

1) Petitioner was denied due process as secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution when the prosecuting attorney failed to prove beyond a reasonable doubt the five essential elements of the common law crime of abduction [ECF No. 42-1 at 4];

2) Petitioner's Fourteenth Amendment due process rights were violated when the prosecutor threatened to prosecute the alleged victim in order to obtain her testimony [id. at 5];

---

[16] Likewise, this ground also addressed Meckling being briefly placed in custody and having handcuffs applied just as the trial broke for recess, as the petit jury was exiting the room, for the bond violation of having contacted the complaining witness.  Id. at 57 – 59.

[17] The procedural history of the case as recounted in the circuit court's order contained an error [see ECF No. 32-3 at 24] stating that Meckling was indicted on four counts, when in fact, the grand jury returned a "not true" bill on the kidnaping charge. See ECF No. 32-1 at 2.

[18] This corrected opinion did not change the date of the finality of the WVSCA's decision, because the corrected opinion was reissued as filed on date the date it was originally filed (April 9, 2015), with the date of the correction listed beneath that. Thus, no new mandate was issued to reflect the entry of the corrected opinion.

3) Petitioner's Sixth Amendment rights to effective assistance of counsel were violated by trial counsel's defective and prejudicial performance, when counsel:

a) failed to investigate and subpoena impeachment witnesses[19] who would have changed the outcome of the trial, i.e., Marcia Bush, who could have testified that when she spoke repeatedly with the victim during the alleged abduction, the victim never said she was being held against her will or that she had had unwanted sexual intercourse with Petitioner [id. at 6]; and

b) failed to object and explain the relevancy of the prior Family Court proceedings, to explain that the victim only obtained the protective order to scare the Petitioner, and that she got into Petitioner's truck voluntarily. Id.

4) Petitioner's Eighth Amendment rights were violated by his life recidivist sentence, which was unconstitutionally disproportionate, because one of the three predicate offenses was of a non-violent nature. Id. at 7.

Without appointing counsel or directing the state to answer, by Order entered a month after the petition was filed, on June 1, 2016, the Circuit Court of Ohio County denied the petition, noting that each of the grounds raised had been previously and finally adjudicated and/or waived by Petitioner, and that Petitioner's claim that his prior uttering conviction could not be a predicate offense for a recidivist life sentence had already been raised on direct appeal and refused by the WVSCA. ECF No. 68-7 at 4. On June 24, 2016, Petitioner filed a motion to reconsider. ECF No. 68-5, l. 5. To date, that motion is still pending.

**Petitioner's Appeal of the Denial of his Third State Habeas Proceedings**

On June 23, 2016, Petitioner filed a *pro se* notice of appeal. ECF No. 68-8 at 3 - 16. The case was docketed as WVSCA Case No. No. 16-0608.  In his *pro se* appellate brief, Meckling challenged the circuit court's finding that the grounds raised in his third habeas petition were previously adjudicated or waived, arguing that the circuit court had never adjudicated some of the issues in his previous habeas petition (Case No. 09-C-163) because it granted relief and

---

[19] Although Petitioner references potential "witnesses" in the plural, he only identifies one potential witness, Marsha Bush.

reversed his conviction over the issue of his appearing shackled in front of the jury.  ECF No. 68-8 at 17 - 40. Therefore, Petitioner raised these grounds:

1) Petitioner was deprived due process of law as secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution when the prosecuting attorney failed to prove beyond a reasonable doubt the five essential elements of the common law crime of abduction. ECF No. 68-8 at 21, 26.

2) Petitioner was deprived of his Fourteenth Amendment right to due process under the United States Constitution when the prosecution threatened to prosecute the alleged victim in order to obtain her testimony. Id. at 21, 28.

3) Petitioner was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution, by trial counsel's defective and prejudicial performance [id. at 21], when counsel:

a) failed to investigate and subpoena impeachment witnesses[20] [whose testimony] would have changed the outcome of his trial [id. at 32]; and

b) failed to object and explain the relevancy of the prior Family Court proceedings (which were the cause of the state's whole case).[21] Id.

4) The trial court deprived Petitioner of his Eighth Amendment rights under the United States Constitution when it sentenced Petitioner under the West Virginia recidivist statute to life imprisonment despite the disproportionate nonviolent nature and character of one of the three predicate offenses.  Id. at 21, 35.

Respondent countered, arguing that *res judicata* barred the petition. ECF No. 68-8 at 46 – 52.

Petitioner filed a reply in opposition. ECF No. 68-8 at 55 – 60.

On June 2, 2017, the WVSCA issued a memorandum decision affirming the circuit court under Rule 21 of the West Virginia Rules of Appellate Procedure. Meckling v. Plumley, 2017 W.Va. LEXIS 423 *1, 2017 WL 2390243 (W.Va. June 2, 2017); see also ECF No. 68-8 at 61 – 64. Mandate issued on July 5, 2017. ECF No. 68-8 at 65.

---

[20] Again, Petitioner's brief argument in support of this ground only identified Marsha Bush as a potential impeachment witness, and asserted that counsel failed to interview her prior to trial. ECF No. 68-8 at 34.

[21] Petitioner's brief argument in support of this ground asserted that at an August 2007 Family Court proceedings on a protective order the victim filed against Petitioner, the victim recanted her original statement, stating that Petitioner never abducted her and that she had only said so because her family pressured her to, because they disliked Petitioner. ECF No. 68-8 at 34 -35.

## D. **Fourth State Habeas Petition**

On September 20, 2017, Meckling filed his fourth *pro se* habeas petition in the Ohio County Circuit Court; it was docketed as Case No. 17-C-267.  ECF No. 58-3.  In that matter, Meckling raised one ground for relief:

1) Petitioner's federal and state constitutional rights were violated by previous habeas counsel's ineffectiveness in failing to properly investigate and question jurors regarding their having viewed Petitioner in shackles.[22] Id. at 5.

Petitioner attached a new affidavit from the juror in question, which stated that "[a]fter witnessing Mr. Meckling being handcuffed in the middle of the trial and after the complaining witnesses [sic] testimony, I feel that the incident did affect and influence my decision on finding him guilty." Id. at 27 - 28.

On December 1, 2017, counsel was appointed.[23] ECF No. 68-9, l. 5 at 2.

To date, that action is still pending and no amended petition has yet been filed.

## 5) **Federal Habeas Petition**

## A. **The Petition**

---

[22] This claim was not a claim Petitioner ever raised in his § 2254 petition; presumably he raised it because in the WVSCA's June 2, 2017 Memorandum Decision affirming the Circuit Court of Ohio County's ruling on his third habeas, the WVSCA noted that

". . . if petitioner believes that his habeas attorney failed to adequately develop certain claims in the prior proceeding, he may file a successive petition raising ineffective assistance of habeas counsel pursuant to syllabus point 4 of Losh, which sets forth exceptions to the doctrine of *res judicata* . . . However, petitioner does not claim ineffective assistance of habeas counsel in the instant case.  Therefore, we conclude that the circuit court did not abuse its discretion in denying the instant habeas petition."

Meckling v. Plumley, 2017 W.Va. LEXIS 423 *10 (W.Va. June 2, 2017).

[23] Appointed counsel for Meckling's fourth habeas action was originally Timothy Rosinsky. However, in a July 30, 2018 telephone call, the Ohio County Circuit Clerk's office advised the PSLC that Rosinsky has withdrawn and on June 14, 2018, attorney Jeremy Cooper was appointed as habeas counsel.

In his August 14, 2015 § 2254 petition, filed with an attached partial memorandum in support,[24] and then in a subsequently-filed second memorandum in support, Meckling raised the following grounds for relief:

1) The State failed to prove essential facts necessary for a conviction of Abduction with Intent to Defile. ECF No. 16 at 6. In his second memorandum in support, for the first time, Petitioner alleged violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in connection with this claim. ECF No. 22 at 1.

2) Petitioner was denied his constitutional rights to due process of law and a fair and impartial trial when the trial judge permitted him to be shackled and handcuffed in the presence of jurors. ECF No. 16 at 8.

3) Petitioner was denied due process of law when a former conviction for uttering a forged writing was used to impose a habitual life sentence. Id. at 11.

4) The habitual life sentence Petitioner received exceeded the lawful jurisdiction of the trial court because one of his prior convictions (for unlawful assault) was inadequate because he only received a 12-month sentence, served in the . . . [NRJ]; under recidivist law, a former conviction is only valid if it is a for a felony, i.e., a sentence greater than one year and confinement in the penitentiary. Id. at 13, 21 - 23.

Attached to his court-approved form petition, Meckling provided what the undersigned construes as a first memorandum in support; it is labeled "Attachment A." Within it, Petitioner includes a "Ground C [sic]" [id. at 21] and a "Ground E [sic]." Id. at 23. Petitioner states that "Ground C" is a continuation from "page 16;" page 16 of the court-approved form petition (when referencing the numeration at the bottom of the page, not the Court's numeration upon filing, which would be page 11) is argument in support of his Ground Four claim. However, Petitioner's "Ground E" argument raises a new claim, and therefore, for clarity and consistency, it is re-numbered here as Ground Five.

---

[24] The memorandum in support attached to Meckling's federal petition only provides argument in support of Grounds Four and Five.  As for Grounds One, Two, or Three, Meckling only provided a brief statement of supporting facts in his petition.  In his second memorandum in support, filed on November 2, 2015, he provided argument in support of only Ground One. See ECF No. 22.

5)  Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial, appellate, and habeas counsel[25] were ineffective for committing multiple acts of omission and commission before, during, and after trial, at sentencing, and in his post-conviction proceedings. Id. at 23 – 26.

**Trial counsel was ineffective for failing to:**

a) identify deficiencies in Count Two of the indictment [id. at 23];

b) subpoena or utilize Marsha Bush as a defense witness to establish when the alleged abduction was terminated [id.];

c) interview, subpoena, or utilize Jacki Armstrong, Pete Baldwin, or Marsha Bush as defense witnesses despite their presence when Petitioner and . . . [the complaining witness] left the Tropicana Club[26] [id.];

d) object when the Court failed to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner abducted the victim for a sexual purpose and motivation, a substantive element of the offense [id.];

e) object when the Court failed to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner detained the victim against her will [id.];

f) failed to object to the imposition of Petitioner's life sentence as a habitual offender because a misdemeanor uttering charge is not a valid former conviction for the imposition of a habitual [offender] life sentence [id. at 23 - 24]; and

g) failed to object to the imposition of  a life sentence as a habitual offender because the conviction and sentence for unlawful wounding is not a valid former conviction for the imposition of a life sentence, because petitioner was not sentenced to a penitentiary and did not serve a single day in a penitentiary. Id. at 24.

**Appellate counsel was ineffective for failing to:**

h) request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in the claims for relief presented in Grounds A to D,[27] *supra* [i.e., failure to request that the WVSCA vacate the convictions and sentences predicated on the

---

[25] Meckling's reference here to "habeas counsel" is directed at Brent Clyburn, who was appointed to represent him in his second state habeas (09-C-163) after the WVSCA returned it to Ohio County Circuit Court. See ECF No. 16 at 24.

[26] The Tropicana Club is the bar where Petitioner and the complaining witness were together, drinking, prior to the abduction. See Trial Transcript, ECF No. 32-4 at 65.

[27] The undersigned construes Petitioner's reference to "Grounds A to D" to mean his Grounds One through Four.

constitutional errors identified in the claims for relief presented in Grounds [One] . . . *supra*, [i.e., failure to] (h) raise as grounds for appeal the state's failure to prove essential facts necessary for a conviction of Abduction with Intent to Defile. ECF No. 16 at 6. In his second memorandum in support, for the first time, Petitioner alleged violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in connection with this claim. ECF No. 22 at 1.

(i) request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in the claims for relief presented in Grounds A to D, *supra* [i.e., failure to] (i) raise as grounds for appeal the denial of Petitioner's constitutional rights to due process of law and a fair and impartial trial that occurred when the trial judge permitted him to be shackled and handcuffed in the presence of jurors. ECF No. 16 at 8.

j) request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in the claims for relief presented in Grounds A to D, *supra* [i.e., that] (j) Petitioner was denied due process of law when a former conviction for uttering a forged writing was used to impose a habitual life sentence. Id. at 11.

k) request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in the claims for relief presented in Grounds A to D, *supra* [i.e., that] (k) the habitual life sentence Petitioner received exceeded the lawful jurisdiction of trial court because one of his prior convictions (for unlawful assault) was inadequate because he only received a 12-month sentence, served in the . . . [NRJ]; under recidivist law, a former conviction is only valid if it is for a felony, i.e., a sentence greater than one year with confinement in the penitentiary. Id. at 13, 21 - 23.

**Habeas counsel was ineffective for failing to:**

l) advance as a claim for relief Petitioner's denial of meaningful and effective assistance of counsel during pre-trial, trial, sentencing, and appeal phases of representation [id. at 24 – 25];

m) identify deficiencies in Count Two of the indictment [id. at 25];

n) subpoena or utilize Marsha Bush as a witness in the habeas proceedings to establish when the alleged abduction was terminated [id.];

o) identify the Court's failure to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner abducted the victim for a sexual purpose and motivation, a substantive element of the offense [id.];

p) identify the Court's failure to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner detained the victim against her will [id.];

q) advance as a claim for relief that a violation of Petitioner's federal constitutional right occurred when the circuit court imposed a habitual life sentence on Petitioner, because the

misdemeanor uttering charge is not a valid former conviction for the imposition of a habitual [offender] life sentence [id.]; and

r) advance as a claim for relief the imposition of a life sentence as a habitual offender because the conviction and sentence for unlawful wounding is not a valid former conviction for the imposition of a life sentence, because petitioner was not sentenced to a penitentiary and did not serve a single day in a penitentiary. Id. at 26.

Petitioner's second memorandum in support only addresses his Ground One claim and made no mention of Grounds Two, Three, Four, or Five. See ECF No. 22.

Petitioner contends that his federal petition was timely filed. Id. at 19.

As relief, Petitioner requests that the Court vacate his conviction for abduction and the enhanced recidivist life sentence. Id. at 20.

**B. <u>Second Motion for Stay and Abeyance</u>**

Meckling seeks a second stay and abeyance, first reiterating that his § 2254 petition raises four [sic] grounds:

Ground One: He was denied due process of law as secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution when the prosecuting attorney failed to prove beyond a reasonable doubt the five essential elements of the common-law crime of abduction.

Ground Two: He was deprived of his right to due process of law and a fair, impartial, and public jury trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial judge ordered him to be shackled and handcuffed at the conclusion the testimony of the state's primary witness, A. M. V., in the presence of the jury, and security and order did not warrant such intrusive conduct.

Ground Three: He was denied procedural and substantive due process of law as secured by the Fifth and Fourteenth Amendments to the United States Constitution when the sentencing court imposed a habitual life sentence upon Petitioner after his convictions for Abduction with Intent to Defile, predicated on a 1996 conviction for a violation of W.Va. Code § 61-4-5.

Ground Four: He was denied procedural and substantive due process of law as secured by the Fifth and Fourteenth Amendments to the United States Constitution when the sentencing court imposed a habitual life sentence upon petitioner after his convictions for Abduction with Intent to Defile predicated on a 1998 conviction for violation of W. Va. Code § 61-2-9(a).

ECF No. 58 at 1 – 2.

Petitioner contends that Grounds One, Three, and Four have been exhausted, but that Ground Two has not.  Id. at 2. However, he asserts that he has filed another state habeas petition that will exhaust Ground Two. Id. He attaches a copy of the same. See ECF No. 58-3.

Further, he argues that under Rhines v. Weber, 544 U.S. 269, 278 (2005), he has "good cause," for his failure to exhaust Ground Two, because the failure to exhaust can be attributed to habeas counsel's ineffectiveness in failing to properly investigate and question jurors as ordered by the Circuit Court of Ohio County; he attaches a copy of the Circuit Court of Ohio County's Order Allowing  Contact  of Jurors in support of the same. In further support of his argument, he cites to Trevino v. Thaler, 185 L.Ed.2d 1044, 1056 (2013); Martinez v. Ryan, 566 U.S. 1 (2012); Coleman v. Thompson, 501 U.S. 722 (1991); and Syl. Pt. 4, Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (W.Va. 1981) (second habeas corpus proceeding permitted for, inter alia, ineffective assistance of previous habeas counsel).

Petitioner asserts that filing of this fourth state habeas action was required  because previous habeas counsel failed to ask potential jurors if Petitioner's shackling affected their decision on whether to find him guilty or not guilty, and that former juror  Nathan Allen  Young recently attested to the fact that having seen  Petitioner shackled "did affect and influence" his decision; Petitioner attaches a copy of this affidavit, which he contends "was newly discovered on August 29, 2017." Id. at 3. Further, he argues that his Ground Two claim is "potentially meritorious," because the trial court prejudicially and erroneously violated this constitutional rights by having him shackled in front of the jury.  Id. Finally, he contends that he has not engaged in any intentionally dilatory litigation tactics, because even though the previous motion for stay was lifted on June 19, 2017 and Respondent was directed to answer the petition by

September 21, 2017, he did not receive the new juror affidavit until September 5, 2017 and HCC was on institutional lockdown from September 5 – 8, 2017.  Id.

**Respondent's Response in Support of Petitioner's Second Motion for Abeyance**

Respondent notes that while this is Petitioner's second request for a stay of his federal habeas proceedings, it has no objection to the stay, given that "Petitioner has conscientiously pursued his unexhausted claims in state court." ECF No. 60 at 1. However, it notes that while a general challenge to Petitioner's recidivist sentencing was raised in a direct appeal ultimately refused by the WVSCA, the WVSCA has not specifically reviewed the particular challenges raised in Grounds Three and Four of Petitioner's federal habeas petition. Therefore, it suggests that "Petitioner may wish to amend his current state habeas petition to include" those claims. Id. at 2.

### III. Discussion

#### A. Pro Se Litigants' Pleadings

Petitioner is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  This rule requires the Court to look

beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. It does not mean that the Court is authorized to become *pro se* litigant's advocate. Despite the liberal construction afforded *pro se* pleadings, the court will not construct arguments or theories for the petitioner in the absence of any discussion of those issues. The requirement of liberal construction also does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990). District courts are not required "to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d at 1278, (adding that "[d]istrict judges are not mind readers").

Moreover, *pro se* petitioners are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*. *Pro se* litigants must follow rules of procedure, including local rules. Further, habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted).

**B. Timeliness Analysis**

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2244(d). The limitation period shall run from the latest of:

      A) the date on which the judgment of conviction becomes final by the conclusion of direct review of the expiration of the time for seeking such review;

      B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations in AEDPA, under § 2244(d)(2), provides that the one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "[U]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners . . ." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).

In the present case, Meckling was convicted on October 29, 2007 and sentenced on December 10, 2007. His direct appeal to the WVSCA was refused on May 22, 2008.  Although He did not petition for a writ of *certiorari,* but as noted *supra*, he had until August 20, 2008 to do so.[28] He filed his first state habeas corpus petition on or about October 14, 2008. It was denied on December 9, 2008; he filed a renewed petition on an unknown date; on January 28, 2009, a supplemental memorandum of opinion and order was issued, again directing that the petition be dismissed; Meckling did not appeal. On March 5, 2009, Meckling filed his second state habeas petition, an original jurisdiction petition in the WVSCA. On May 13, 2009, the WVSCA transferred the case to Ohio County Circuit Court, where, on July 25, 2013, relief was denied. On

---

[28] Pursuant to Rules 13.1 and 13.3 of the United States Supreme Court Rules, a request for further review of the Petitioner's conviction by petition for *certiorari* could have been filed within the 90-day period following the denial of his direct appeal.

August 8, 2013, Meckling moved for reconsideration.   On February 3, 2014, Ohio County Circuit Court entered an order granting relief and awarding Meckling a new trial. On February 25, 2014, the Respondent filed a notice of appeal. On April 9, 2015, the WVSCA issued an opinion reversing the Ohio County Circuit Court. Mandate issued on the WVSCA's decision on May 11, 2015. On August 4, 2015, Meckling filed the instant federal petition.

Therefore, Meckling's judgment became final on August 20, 2008. His first *pro se* state habeas in Marshall County Circuit Court, filed on or about October 14, 2008, tolled the one-year period of limitations after 54 days of the one-year period of limitation had elapsed.[29] See 28 U.S.C. § 2244(d)(2) [providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."]; Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). The limitations period remained tolled throughout the pendency of the first habeas petition, which was dismissed on January 28, 2009. Pursuant to the West Virginia Rules in effect at the time, Meckling had four months in which to timely petition for appeal of the denial of his habeas petition.[30] Therefore, Meckling's habeas petition was "still pending" until May 28, 2009, the date his right to file an appeal expired, and the one year statute of limitation began to run.   Adding one day pursuant to Federal Rule of Civil Procedure 6(a), see Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000), the one-year clock would have begun running on May 28, 2009.   However, on March 5, 2009, while the statute of limitations was still tolled, Meckling filed his second habeas petition: the original jurisdiction

---

[29] Determination of the date this originally "AWOL" habeas petition was filed was critical to determining how much time Meckling had left on his statute of limitations.  Had Meckling filed it before August 21, 2008, he would not have lost the initial 54 days from his 1-yr period of limitation.

[30] The West Virginia Revised Rules of Appellate Procedure became effective on December 1, 2010. Under Rule 5(b) of the Revised Rules, a petitioner now has thirty days to file a notice of appeal.

petition in the WVSCA, tolling the one-year period of limitations again; on July 25, 2013, the Ohio County Circuit Court denied relief and dismissed the petition. On August 8, 2013, Meckling moved for reconsideration.  On February 3, 2014, the Ohio County Circuit Court entered its Order, granting relief and awarding Meckling a new trial. Respondent appealed. On April 9, 2015, the WVSC issued its opinion reversing the Ohio County Circuit Court.  Mandate issued on that decision on May 11, 2015. At that point, the one-year clock began running again.[31] Although Meckling had the right to petition the United States Supreme Court for a writ of *certiorari*, he did not do so. Unlike with direct review, however, the limitation period does not remain tolled during the 90-day writ of *certiorari* filing period following denial of state post-conviction relief. Harris, 209 F.3d at 328; Washington v. Beck, 2005 WL 1869229, at *1 (M.D. N.C. Aug. 3, 2005) (citing Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999)). By extension, this means that unlike a direct appeal, the statute of limitations is not tolled during the time in which a petitioner could seek a petition for *certiorari*. Therefore, again adding a day pursuant to Fed.R.Civ.P Rule 6(a), the one-year clock started running again on May 12, 2015.  On August 14, 2015, after 94 more days had run, Meckling filed the instant federal petition. Because the time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001), after adding a day pursuant to Fed.R.Civ.P. 6(a), the one-year clock began running again on the remaining 217 days of his one-year period of limitation on August 15, 2015, and continued to run until it expired on December 15, 2015.

## C. First Motion to Stay/Motion to Amend

---

[31] "State review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open." Lawrence v. Florida, 549 U.S. 327, 332 (2007).

The May 3, 2016 Report and Recommendation ("R&R") recommending the granting of Meckling's first motion to stay [ECF No. 44] accepted the parties' contention that there were only four grounds in the petition and did not reflect that there were five grounds raised. Therefore, it appears that the parties were unaware that Meckling had raised a fifth ground with eighteen subparts.

In that first motion to stay/motion to amend, Meckling alleged that he had raised four [sic] claims in his § 2254 petition. ECF No. 42 at 2. He stated that "the claims below are currently in front of the Circuit Court of Ohio County, but only Claim 2 was presented by the prosecution to the . . . [WVSCA] for exhaustion; all other claims are exhausted [sic]."[32]  He lists the four § 2254 claims raised as:

CLAIM 1:  Petitioner was deprived due process of law as secured by the 5th, 8th and 14th Amendments to the Constitution of the United States, when the prosecuting attorney failed to prove beyond a reasonable doubt the five essential elements of the common-law crime for abduction.

CLAIM 2: Petitioner was deprived of his right to due process on [sic – of] law and a fair, impartial, and public jury trial as guaranteed by the 5th, 6th[,] and 14th Amendments to the Constitution of the United States, when the trial judge ordered petitioner to be shackled and handcuffed at the conclusion of testimony of the State's primary witness, A.M. Vaughn,  in the presence  of the jury, and security and order did not warrant such intrusive conduct.

CLAIM 3:  Petitioner was denied procedural and substantive Due Process of law as secured by the 5th and 14th Amendments to the Constitution of the U.S. when the sentencing Court imposed a habitual life sentence upon Petitioner after his conviction for Abduction with  Intent to Defile predicated  on a violation  of W Va. Code §  61-4-5 in 1996.

CLAIM 4: Petitioner  was denied procedural  and substantive  due process  of law as secured be the 5th and 14th Amendments to the Constitution of the U.S. when the sentencing Court imposed a habitual life sentence upon Petitioner after his convictions for Abduction with Intent to Defile predicated on a violation of W Va. Code § 61-2-9(a) in 1996.

---

[32] It is unclear here what Meckling was attempting to say here, given that the first part of this sentence appears to contradict the second.

ECF No. 42 at 2 – 3.[33] Next, he contended that "[t]he three claims below are to be amended once exhausted in the State level." Id. at 3.  He asserted that he would move to have Ground Three and Four "dismissed once all other issues have been exhausted and an Amended Petition is filed." Id., n 4.  He then lists his three proposed new claims as:

> CLAIM 5: Petitioner was deprived Due Process of his 14th Amendment to the U.S. Constitution by the prosecutor threatening to prosecute the alleged victim in order to obtain her testimony.
>
> CLAIM 6: Petitioner was denied his right to effective assistance of counsel, guaranteed by the 6th Amendment to the U.S. Constitution, by trial counsel's defective and prejudicial performance;
>
>> a)  Counsel failed to subpoena impeachment witness[];
>>
>> b) Counsel failed to object and explain the relevancy of the Family Court proceedings.
>
> CLAIM 7: The trial Court deprived the Petitioner his 8th Amendment to  the U.S. Constitution when it sentenced Petitioner, pursuant to West Virginia's recidivist statute, to life imprisonment despite the disproportionate non-violent nature and character of one of the three predicate offenses.

**D. Respondent's Previous Motion to Dismiss**

In its motion to dismiss, filed forty-eight days after the one-year period of limitation had expired, Respondent attached copies of most of the state court record.  Respondent argued that Petitioner admitted having failed to exhaust his first ground, alleging either insufficient evidence or IAC for failing to challenge the same, and thus, Petitioner failed to meet the total exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). ECF No. 32 at 1 - 2.

As previously noted, since then, in its response to the second motion to stay, Respondent has changed its position and now admits that Grounds Three and Four are not exhausted, either.

---

[33] These claims have been reworded from the format that Petitioner used in his § 2254 petition.  Claim One is similar, but reworded; Claim Two, Three, and Four now have had the federal bases added to them that they were raised and exhausted with state court, but were not specifically stated in Meckling's § 2254 petition. Claim Four also misstates the code section violated; unlawful assault is W.Va. Code § 61-2-9(a), not W.Va. Code § 61-2-9(a).

However, it is apparent that Respondent still appears to overlook all 18 subclaims of IAC that Meckling raised in Ground Five, none of which have ever been raised in state court.

**E. Second Motion to Stay**

Here, while it is clear that Respondent does not oppose Meckling's second motion for a stay, after a careful review of the record, the undersigned cannot agree that Meckling has "conscientiously pursued his unexhausted claims in state court." See ECF No. 60 at 1.  Further, the undersigned notes, unlike the position Respondent took in its answer [ECF No. 31 at 3] and memorandum in support of its earlier dispositive motion, where it only noted Meckling's admission that Ground One was not exhausted and its agreement with that statement [ECF No. 33 at 7, 12], Respondent now contends that Grounds Three and Four have not been exhausted either.  ECF No. 60 at 2.

It is apparent from a careful review of the record that inexplicably, while Meckling contends that his federal petition raises four grounds, and that only Ground One was not exhausted, Meckling's § 2254 petition actually raises *five* grounds, – Ground 5 is an  ineffective assistance of counsel ("IAC") claim with *eighteen* subparts: 7 grounds of IAC against trial counsel; 4 grounds of IAC of appellate counsel; and 7 grounds of IAC of habeas counsel. See ECF No. 16 at 23 - 26. Moreover, contrary to Meckling's contention, *none* of his claims in his federal petition were exhausted as they were worded when it was filed. Grounds Two and Three, which Meckling claimed were exhausted, were not raised here with the federal bases he raised and exhausted them with in state court, and therefore, while *similar* to the claims he exhausted in state court, they were not the *same* claims.[34] Timely docketing the first motion to stay as the motion to amend that it was intended to be would have "cured" the exhaustion problems with

---

[34] In his third state habeas and its appeal, Meckling has since exhausted Ground One.

Grounds Two and Three. Ground Four likewise was not raised with a federal basis here; moreover, it was raised with a different factual basis than that the claim Meckling exhausted in state court, so it is not exhausted.  Finally, to this day, not one of the 18 subcategories of IAC Meckling raised in Ground Five has ever been exhausted.  Accordingly, the petition, worded as it was when originally filed, was not a mixed petition after all.

Additionally, in the statement regarding timeliness in its answer to the petition, Respondent mentions the first *pro se* petition that Meckling inadvertently filed in Marshall County on "unknown date," and its denial on December 9, 2008, and then contends that on March 5, 2009, Meckling appealed the denial of this petition.  As noted *supra*, Meckling did not appeal the first *pro se* state habeas; what he filed on March 5, 2009 was a second *pro se* habeas petition – the original jurisdiction petition to the WVSCA, which was sent back to Ohio County and opened there as Case No. 09-C-163.   Respondent's memorandum in support of its dispositive motion then contradicts the position taken in its answer; while it also states that after Meckling's first *pro se* petition was filed in Marshall County, was transferred to Ohio County, and denied without a hearing on December 9, 2008, it then correctly states that on March 5, 2009 Meckling then filed a subsequent habeas petition, not an appeal, in the WVSCA.

Nonetheless, while Meckling's second motion to stay contends that only Ground Two remains unexhausted, as noted *supra*, the undersigned cannot agree. Further, for reasons that remain unclear, in the copy of the fourth state habeas petition attached to his second motion to stay, the sole claim Meckling raised was not the *same* claim he raised here as Ground Two. Instead, is a single claim of IAC of habeas counsel, a claim not even included in his instant federal petition.  Even if Meckling exhausts this claim in state court, he cannot amend his federal petition to add it because, as noted *supra*, the one-year statute of limitation expired on December

15, 2015, and thus any amended petition attempting to raise this claim would not have been filed within the one year limitation period. Pursuant to Fed.R.Civ.P. Rule 15(c)(1)(B), untimely claims can only be raised in an amended petition if they "relate back" to the date of the original pleading, i.e., if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" The Supreme Court has held that "relation back" is proper only where "the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

While apparently unbeknownst to him, Meckling's original petition did raise 7 IAC of habeas counsel claims [see ECF No. 16 at 24 – 26], none of them had anything to do with habeas counsel's failure to properly investigate and question jurors regarding their having viewed him in shackles; thus, this new claim in his fourth state habeas petition is not "tied to a common core of operative facts," and "relation back" is not proper. Because it does not "relate back" to the original petition, it falls outside of the one-year statute of limitations and is time-barred.

Likewise, a review of the three proposed claims Meckling sought to file in his first motion to stay/motion to amend reveals that they were already time-barred when he raised them. The proposed new CLAIM 5 [sic], that Meckling's 14th Amendment due process rights were violated when the prosecutor threatened to prosecute the alleged victim in order to obtain her testimony is a claim that was never raised in his original petition; however, Meckling did subsequently raise and exhaust it in his third state habeas. His proposed new CLAIM 6(a), that his 6th Amendment rights to effective assistance of counsel were violated when trial counsel failed to subpoena an impeachment witness, is a different claim than his Ground 5(b) and (c) claims that trial counsel was deficient for not subpoenaing various defense witnesses.  His proposed new CLAIM 6(b), that his 6th Amendment right to effective assistance of counsel was

violated when trial counsel failed to object and explain the relevancy of the Family Court proceedings, while also raised and exhausted in his third state habeas and its appeal, is not a claim made in the original petition.  Finally, Petitioner's proposed CLAIM 7, that the trial Court violated his 8th Amendment rights by sentencing him to life imprisonment under West Virginia's recidivist statute, despite the disproportionate non-violent nature and character of one of the three predicate offenses, because it is apparent that Petitioner is referencing his predicate offense of *forgery*, is a different claim than the Ground Four claim he raised in his petition, which challenged the use of his unlawful *assault* conviction as a predicate conviction to sentence him to life imprisonment under West Virginia's recidivist statute.  Because none of these proposed claims are "tied to a common core of operative facts," [see Mayle v. Felix, 545 U.S. at 664] to any claim made in the original petition, pursuant to Fed.R.Civ.P. Rule 15(c)(1)(B), none of them "relate back" and thus, they are all time-barred, having been filed nearly five months after the one-year period of limitation expired on December 15, 2015.

Here, Petitioner has filed a direct appeal, four state petitions for writs of habeas corpus, and two of them have been appealed. Petitioner's fourth state petition is still pending in circuit court; to date, an amended petition has not yet been filed. However, after a review of each of those proceedings and the instant petition, the undersigned has determined that unless his first motion to stay is construed as the motion to amend it was also intended to be, only Ground One from Petitioner's § 2254 claims would be exhausted, which Meckling finally exhausted in the appeal of his third state habeas. More specifically, the undersigned makes the following findings with regard to each of Petitioner's individual claims:

- **Ground One**: The State failed to prove essential facts necessary for a conviction of Abduction with Intent to Defile. In his second memorandum in support, for the first time, Petitioner alleged violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in connection with this claim.

This claim, while not exhausted at the time Meckling first filed his § 2254 petition, has since been exhausted by the appeal of the claim as Ground One in his third state habeas petition and its appeal.

- **Ground Two**: Petitioner was denied his constitutional rights to due process of law and a fair and impartial trial when the trial judge permitted him to be shackled and handcuffed in the presence of jurors.

  In this claim, Meckling nowhere alleges any violation of his *federal* constitutional rights. While the underlying claim of Meckling's having been viewed by jurors, shackled and handcuffed, *was* raised (by Respondent) on appeal of Meckling's second state habeas petition (with only a state law argument in support); in Meckling's brief in response through habeas counsel, Meckling relied in part on federal law and alleged violations of the Sixth and Fourteenth Amendments, and thus, the claim was exhausted by being raised to the highest state court.  However, because the claim he originally raised here did not include the same, it was not the *same* claim that Meckling exhausted in the appeal of his second state habeas. Nonetheless, docketing Meckling's first motion to stay again as the motion to amend it was also intended to be would "cure" this issue.

  Finally, in his pending fourth *pro se* state habeas petition, Meckling makes a single, related claim, that his state and federal constitutional rights were violated by the ineffectiveness of his habeas counsel, who failed to properly investigate and question jurors regarding having seen him shackled at trial. While *related* to his Ground Two claim, counsel's alleged ineffectiveness as to this issue is an entirely different claim than that already raised in Ground Two. Moreover, even if Meckling ultimately exhausts this IAC of habeas counsel clam, because it is not one of the IAC of habeas counsel that Meckling originally raised here, and does not relate back to any IAC of habeas counsel claim already so raised, it is untimely and cannot be included in any future amended petition.

- **Ground Three**: Petitioner was denied due process of law when a former conviction for uttering a forged writing was used to impose a habitual life sentence.

  In this claim, Meckling nowhere alleges any violation of his federal constitutional rights, nor does he rely on federal law, thus, there is no federal basis to the claim.  Although a *similar* claim was raised with a federal basis (a violation of the Eighth Amendment) in his third state habeas as Ground 4, and appealed to the WVSCA as Ground 4, also as a violation of the Eighth Amendment, is not the *same* claim Meckling now raises here. However, docketing Meckling's first motion to stay as the motion to amend it was also intended to be would "cure" this issue.

- **Ground Four**: The habitual life sentence Petitioner received exceeded the lawful jurisdiction of the trial court because one of his prior convictions (for unlawful assault) was inadequate because he only received a 12-month sentence, served in the . . . [NRJ];

under recidivist law, a former conviction is only valid if it is a for a felony, i.e., a sentence greater than one year and confinement in the penitentiary.

This claim is not only not exhausted, it states no federal basis.

While Petitioner has raised *related* claims previously and has exhausted *those claims* in state courts, those claims challenged a different predicate conviction for Meckling's recidivist sentence, i.e., the "non-violent" felony forgery/uttering conviction, which Meckling raised as Ground Four in his first state habeas petition (but did not appeal); as Ground Two in his "separate memorandum" filed by counsel in his second state habeas (but did not raise in Respondent's appeal of the same); and again in his third state habeas and its appeal as Ground Four. However, Meckling has never exhausted the claim that his recidivist life sentence exceeded the lawful jurisdiction of the trial court because his prior convictions for *unlawful assault* was inadequate for purposes of being considered a predicate conviction, thus, this claim is not exhausted. Therefore, even if Meckling's first motion to stay had been timely docketed as the motion to amend it was also intended to be, it would not have salvaged this claim.

- **Ground Five (a)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to: (a) identify deficiencies in Count Two of the indictment.

This claim is not exhausted, having never been raised in any state court before.

- **Ground Five (b)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to (b) subpoena or utilize Marsha Bush as a defense witness to establish when the alleged abduction was terminated.

This claim is not exhausted.

Petitioner raised a related claim in his first state habeas as Ground Two, alleging that counsel was ineffective for failing to subpoena "(3) key witnesses" who would have made a difference in the outcome of the trial; however, he did not specifically identify what witness or witnesses he was referring to; the claim alleged no federal basis; and he did not appeal; thus, he did not exhaust that claim.

He also raised a related claim in his second state habeas as Ground Two, alleging counsel's ineffectiveness for failing to subpoena "key witness Marsha Bush and four other witnesses." This claim, likewise, stated no federal basis, and was not raised on appeal.

In his third state habeas and its appeal, as Ground Three (a), Meckling raised a similar claim, alleging that his Sixth Amendment right to effective assistance of counsel was violated when counsel failed to investigate and subpoena impeachment witnesses who would have changed the outcome of the trial, i.e., Marsha Bush; he provided specific detail as to what Ms. Bush's testimony would have been regarding the alleged abduction (i.e., that the victim never told Ms. Bush she was being held against her will during their repeated conversations during the alleged abduction) and the subsequent alleged unwanted sexual intercourse. However, Petitioner's Ground Five(b) claim has a different

factual and federal basis: it alleged violations of his First, Sixth, and Fourteenth Amendment rights, instead of only a Sixth Amendment violation, and it only offered Ms. Bush's testimony to establish when the alleged abduction was terminated, instead of to establish that Ms. Bush would have testified that the victim never told her she was being abducted at all.  This is not the *same* claim that Petitioner exhausted in his third state habeas appeal, and thus it is not exhausted.

- **Ground Five (c)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to (c) interview, subpoena, or utilize Jacki Armstrong, Pete Baldwin, or Marsha Bush as defense witnesses despite their presence when Petitioner and . . . [the complaining witness] left the Tropicana Club.

This claim is not exhausted.

While Meckling raised a similar claim as Ground Two in his first state habeas petition, he did not identify what witnesses he was referencing; what their testimony would have been; and he stated no federal basis to the claim; further, he did not appeal when the petition was denied, thus, it was not exhausted.

He raised a related claim as Ground Two in his second state habeas, but there, he alleged that counsel was ineffective for failing to subpoena Marsha Bush and four other unspecified witnesses; he provided no detail as to what their testimony would have been; and stated no federal basis for the claim.  The claim was not raised on Respondent's appeal of the second state habeas, thus, it was not exhausted.

Meckling raised a similar claim as Ground Three in his third state habeas petition, but only alleged that counsel was ineffective for failing to investigate and subpoena impeachment witnesses who would have changed the outcome of the trial, but he only identified potential witness Marsha Bush, who he alleged could have testified that when she spoke repeatedly with the complaining witness during the alleged abduction, the complaining witness never told her she was being held against her will or that there had been unwanted sexual intercourse between the victim and Petitioner.  Further, Petitioner only alleged a Sixth Amendment rights violation, not violations of his First, Sixth, and Fourteenth Amendment rights.  On appeal of the third state habeas petition, Meckling again only argued that Marsha Bush should have been investigated and subpoenaed to testify, and that counsel's failure to do the same violated his Sixth Amendment rights.

Thus, not only does this claim, as it is now raised in Meckling's federal petition have a different federal ground, it also has a different factual basis; thus, it is not exhausted.

- **Ground Five (d)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to (d) object when the Court failed to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner abducted the victim for a sexual purpose and motivation, a substantive element of the offense.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (e)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to (e) object when the Court failed to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner detained the victim against her will.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (f)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to (f) failed to object to the imposition of Petitioner's life sentence as a habitual offender because a misdemeanor uttering charge is not a valid former conviction for the imposition of a habitual [offender] life sentence.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (g)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when trial . . . counsel . . . [was] ineffective for failing to (g) failed to object to the imposition of a life sentence as a habitual offender because the conviction and sentence for unlawful wounding is not a valid former conviction for the imposition of a life sentence, because petitioner was not sentenced to a penitentiary and did not serve a single day in a penitentiary.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (h)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when appellate . . . counsel . . . [was] ineffective for failing to request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in . . . Ground[] [One] . . . *supra*, [i.e., failure to] (h) raise as grounds for appeal the state's failure to prove essential facts necessary for a conviction of Abduction with Intent to Defile. In his second memorandum in support, for the first time, Petitioner alleged violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in connection with this claim.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (i)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when appellate . . . counsel . . . [was] ineffective for failing to request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in . . . Ground[] [Two] . . . *supra*, [i.e., failure to] (i) raise as grounds for appeal the denial of Petitioner's constitutional rights to due process of law and a fair and

impartial trial that occurred when the trial judge permitted him to be shackled and handcuffed in the presence of jurors.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground 5 (j)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when appellate . . . counsel . . . [was] ineffective for failing to request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in . . . Ground[] [Three] . . . *supra*, [i.e., that] (j) Petitioner was denied due process of law when a former conviction for uttering a forged writing was used to impose a habitual life sentence.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (k)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when appellate . . . counsel . . . [was] ineffective for failing to request that the WVSCA vacate the convictions and sentences predicated on the constitutional errors identified in . . . Ground[] [Four] . . . *supra*, [i.e., that] (k) the habitual life sentence Petitioner received exceeded the lawful jurisdiction of the trial court because one of his prior convictions (for unlawful assault) was inadequate because he only received a 12-month sentence, served in the . . . [NRJ]; under recidivist law, a former conviction is only valid if it is a for a felony, i.e., a sentence greater than one year with confinement in the penitentiary.

This claim is not exhausted because it has never been previously raised in any state court proceeding.

- **Ground Five (l)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (l) advance as a claim for relief Petitioner's denial of meaningful and effective assistance of counsel during pre-trial, trial, sentencing, and appeal phases of representation.

This claim is not exhausted, having never been previously raised in state court.

- **Ground Five (m)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (m) identify deficiencies in Count Two of the indictment.

This claim is not exhausted, having never been previously raised in state court.

- **Ground Five (n)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (n) subpoena or utilize Marsha Bush as a witness in the habeas proceedings to establish when the alleged abduction was terminated.

This claim is not exhausted, having never been previously raised in state court.

- **Ground Five (o)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (o) identify the Court's failure to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner abducted the victim for a sexual purpose and motivation, a substantive element of the offense.

This claim is not exhausted, having never been previously raised in state court.

- **Ground Five (p)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (p) identify the Court's failure to instruct the jury that a guilty verdict for Abduction with Intent to Defile requires the state to prove beyond a reasonable doubt that Petitioner detained the victim against her will.

This claim is not exhausted, having never been previously raised in state court.

- **Ground Five (q)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (q) advance as a claim for relief that a violation of Petitioner's federal constitutional right occurred when the circuit court imposed a habitual life sentence on Petitioner, because the misdemeanor uttering charge is not a valid former conviction for the imposition of a habitual [offender] life sentence.

This claim is not exhausted, having never been previously raised in state court.

- **Ground Five (r)**: Petitioner's First, Sixth, and Fourteenth Amendment rights were violated when habeas . . . counsel . . . [was] ineffective for failing to: (r) advance as a claim for relief the imposition of a life sentence as a habitual offender because the conviction and sentence for unlawful wounding is not a valid former conviction for the imposition of a life sentence, because petitioner was not sentenced to a penitentiary and did not serve a single day in a penitentiary.

This claim is not exhausted, having never been previously raised in state court.

The grant of Meckling's first stay permitted him to return to state court to file his third state habeas. Nonetheless, he has still failed to exhaust all of his claims. In its memorandum decision affirming the circuit court's decision to deny Meckling relief on his third state habeas, WVSCA noted that

> [w]e conclude that petitioner, with reasonable diligence, could have sought relief
> on all issues that he now alleges remain unresolved following his previous habeas

> proceeding and that, accordingly, the circuit court did not err in finding that 'each
> of the grounds raised . . . has been previously and finally adjudicated and/or
> waived by [p]etitioner.'

Meckling v. Plumley, 2017 W.Va. LEXIS 423 *10 (W.Va. June 2, 2017).   The undersigned

agrees. Even after having been granted one stay, and now seeking another, it is apparent that,

unless the first motion to stay is also construed as the motion to amend it was intended to be,

Petitioner has only managed to exhaust one of his federal claims by returning to state court:

Ground One.

The propriety of holding habeas petitions in abeyance pending exhaustion is subject to

doubt. It has been the Court's view that, since proceeding in such a fashion might involve an

"implication as to the merits," Slayton v. Smith, 404 U.S. 53, 54 (1971), this fact, as well as

considerations of comity, generally dictate dismissal without prejudice for failure to exhaust

when "a reasonable possibility exists that the state court may decide to reach the merits of a

claim." Meadows v. Legursky, 904 F.2d 903, 910 (4th Cir. 1990).

However, taking the instant petition at face value and in light of the statute of limitations

issues arising as a consequence of 28 U.S.C. § 2244, it seems that, at this point, when dismissal

for failure to exhaust state remedies would result in the petitioner's inability to timely seek

federal habeas relief, holding the petition in abeyance does not implicate the Court's view on the

merits of the § 2254 petition or its underlying complaints nor does it interfere with the state's

clear right to consider and decide the issues raised and which are pending in that forum.

In Rose v. Lundy, 455 U.S. (1982), the United States Supreme Court held that a federal

district court may not adjudicate mixed petitions and imposed a requirement of total exhaustion,

implemented by dismissing mixed petitions without prejudice and allowing petitioners to return

to state court to litigate the unexhausted claims. At the time the Supreme Court issued that

decision, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") had not been

enacted, and there was no statute of limitations on federal habeas corpus petitions.  Therefore, dismissal without prejudice did not preclude a petitioner from returning to federal court once his claims were exhausted in state court proceedings.

However, "[a]s the result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions, run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Rhines v. Weber, 544 U.S. 269, 275 (2005). Accordingly, the Supreme Court has held that a federal district court may, under some circumstances, stay, rather than dismiss without prejudice, a federal habeas petition containing both exhausted and unexhausted claims. Nonetheless, a stay and abeyance procedure, "if employed too frequently, has the potential to undermine [the] twin purposes" of the AEDPA.  Rhines, 544 U.S. at 277. Therefore, stay and abeyance procedures are only available in limited circumstances.  Id.

The procedure recognized by the court in Rhines allows the district court the option of staying a federal habeas petition and holding in abeyance to allow a petitioner to return to state court to exhaust his previously unexhausted claims. Once total exhaustion has been achieved, the stay is lifted and the petitioner may proceed in federal court. However, this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court. Thus, if a petitioner seeks a stay in order to exhaust claims pleaded in the original petition, then, he is required to allege facts showing (1) that "good cause" exists for his failure to exhaust the unexhausted claims; and (2) that the unexhausted claims are "potentially meritorious" on federal habeas corpus review. Rhines, 544 U.S. at 27-78.

Here, as noted supra, despite having actually filed a petition containing only unexhausted claims, Meckling has already received one stay and abeyance. Under the circumstances presented here, the undersigned would find no grounds for the application of another stay and

abeyance procedure. First, despite this Court's having already permitted Meckling a stay and abeyance to exhaust his many unexhausted claims, Meckling has *still* not availed himself of the opportunity to present all of his unexhausted claims to the state courts. Second, Meckling cannot show good cause for the failure to exhaust his claims in state court; indeed, he still appears to be unaware of his unexhausted Ground Five IAC claims; he has not even attempted to show good cause.   He has filed four separate state habeas petitions and appealed one of them.[35] His numerous unexhausted claims were either known to him or should have been, at the time those cases were filed. Thus, those claims should have been raised in one of Petitioner's state habeas petitions.

As noted *supra*, Meckling filed this case on August 14, 2015.  While the petition was timely when it was filed, the United States Supreme Court has held that "§ 2244(b)(2) does not toll the limitations period during the pendency of a federal habeas petition." Duncan, *supra* at 533 U.S. 167. Therefore, because this matter has been pending for nearly three years, and will not be final until the District Judge rules on this matter, a dismissal would render any subsequent federal habeas petition untimely.

Despite the fact that Petitioner's efforts to exhaust have been inadequate at best, because of the court's inadvertent error regarding the first motion to stay, in failing to timely advise Petitioner of the status of *all* of his claims, and in failing to also docket the motion to stay as a motion to amend, under the circumstances presented here, the undersigned feels it would be fundamentally unfair to deny Petitioner's second motion to stay.

Had Petitioner's first motion to stay also been timely docketed as a motion to amend, Grounds Two and Three would have been rendered exhausted and timely raised, because they

---

[35] The second was appealed by Respondent; the fourth is still pending in Ohio County Circuit Court.

related back to the claims originally made, and Petitioner could have then proceeded to exhaust the Ground Five claims of trial, appellate, and habeas counsel in his third state habeas petition. See Mayle v. Felix, 545 U.S. at 664.

Therefore, the undersigned recommends that the petition, though unexhausted when filed, because Petitioner has now three exhausted claims (Grounds One, Two, and Three), should be liberally construed *nunc pro tunc,* as a mixed petition at the time that it was filed after all, and Petitioner should be granted a second stay to complete exhaustion of the remainder of his claims via an amended petition in his now-pending fourth state habeas. **In summary: should the court adopt the recommendations herein, Petitioner's Grounds One, Two, and Three will be exhausted; Ground Four and Petitioner's original Ground Five with its eighteen subparts are not; if Petitioner does not raise them in an amended petition in his presently-pending fourth state habeas petition, he will lose them forever.  Petitioner is warned that *no further stays will be granted* and he must raise and exhaust *all* of his remaining claims in state court before moving to reinstate this case, or they will be dismissed. There will be no further stays and abeyances granted.** Should Petitioner choose to dismiss his Grounds Three and Four claims, as he intimated his intent to do in his first motion to stay, he must move the court to do so when the case is reinstated.

## IV. Recommendation

Accordingly, the undersigned **RECOMMENDS** that Petitioner's unopposed Motion for Stay and Abeyance [ECF No. 58] be **GRANTED;** that the petition be construed as a mixed petition; that the Clerk place this matter on the inactive docket of the Court pending resolution of Petitioner's state habeas petition; and that Petitioner's May 2, 2016 motion to stay [ECF No. 42] also be docketed as a motion to amend the petition. Once so docketed, the undersigned **RECOMMENDS** that the May 2, 2016 motion to amend be **GRANTED in part** as to amending

41

Grounds Two and Three to include the federal bases that the claims originally had when raised and exhausted them in state court (but omitted when Petitioner filed his federal petition), and **DENIED in part as futile** as it pertains to the three new proposed Grounds Five [sic] through Seven.

Further, the undersigned **RECOMMENDS** that Petitioner be **DIRECTED** to file (1) quarterly reports, beginning February 1, 2019, regarding the status of his state habeas and appeals on the unexhausted claims he intends to pursue in his federal § 2254 petition; and (2) a Notice of Exhaustion within thirty (**30**) days from the date his state court remedies have been fully exhausted. Petitioner must move for reinstatement of this action to the active docket of the Court within thirty (**30**) days from the date his state court remedies have been exhausted. **Failure to do so could result in dismissal of his present petition.**

Any party may, **within fourteen (14) days** of the filing of this Recommendation, file with the Clerk of Court written objections identifying those portions of the Recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further **DIRECTED** to transmit a copy electronically to all counsel of record via electronic means.

DATED: August 6, 2018

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE